# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. 18- |
| | : | |
| v. | : | **VIOLATION:** |
| | : | **18 U.S.C. § 371** |
| **SOMBO KANNEH,** | : | (Conspiracy) |
| | : | |
| Defendant. | : | **FORFEITURE:** |
| | : | **18 U.S.C. § 981(a)(1)(C); 28 U.S.C.** |
| | : | **§ 2461(c); 21 U.S.C. § 853(p)** |

## INFORMATION

The United States charges that:

### General Allegations

1.   Unless stated otherwise, the relevant time period for this Information spans from in or about August 2015 through in or about December 2017.

### Atius Technology Institute and Its Employees

2.   Atius Technology Institute ("Atius") was a privately owned, non-accredited school specializing in information technology courses. Atius was registered to do business in the State of Maryland and the Commonwealth of Virginia. Atius had two campuses, one located at an office building at 4715 Sellman Road, Suite G, Beltsville, Maryland, and the other located at an office building at 6320 Augusta Drive, Twelfth Floor, Springfield, Virginia, which opened in or about March 2017.

3.   Beginning in or about October 2016 the defendant, SOMBO KANNEH ("KANNEH"), was employed full-time by Atius as its Financial Manager. In her capacity as Financial Manager, KANNEH was responsible for managing Atius's finances on a day-to-day

basis. KANNEH was also responsible for supervising Atius's two office managers at Atius's Maryland and Virginia offices.

4. At all relevant times ATIUS EMPLOYEE 1 was a co-owner or sole owner of Atius, and controlled all of its finances and operations. When Atius was first incorporated in or about 2014, ATIUS EMPLOYEE 1 shared ownership of Atius with two other individuals. ATIUS EMPLOYEE 1 became the sole owner of Atius in or about October 2016. As the Financial Manager, KANNEH helped to facilitate the transaction through which ATIUS EMPLOYEE 1 became the sole owner of Atius, and subsequently became a registered agent for the corporation.

5. Beginning in or about October 2016, ATIUS EMPLOYEE 2 was employed full-time by Atius as its Program Manager. In his capacity as Program Manager, ATIUS EMPLOYEE 2 was responsible for managing Atius's student enrollment, curriculum, and its correspondence with the United States Department of Veterans Affairs ("VA").

6. Atius employed up to six individuals full-time and up to approximately twenty individuals part-time at any given time. The full-time employees included KANNEH, ATIUS EMPLOYEE 1, ATIUS EMPLOYEE 2, and office managers. The part-time employees included instructors and recruiters, among other individuals. ATIUS EMPLOYEE 1 supervised all of Atius's full-time employees, each of whom was required to report directly to ATIUS EMPLOYEE 1. ATIUS EMPLOYEE 1 supervised Atius's part-time employees either directly or indirectly. ATIUS EMPLOYEE 1 determined all Atius employees' job descriptions, salaries, benefits, and work schedules.

**Vocational Rehabilitation and Employment Program and Its Employees**

7. At all relevant times the VA was an agency of the United States Government.

8.      At all relevant times the Vocational Rehabilitation and Employment ("VR&E") program was authorized by Congress under Title 38, United States Code, Chapter 31.  The VR&E program provided eligible veterans with services and assistance necessary to enable them to achieve maximum independence in daily living and to obtain and maintain suitable employment.  VR&E program benefits were available to veterans who served in the military after September 16, 1940, and did not receive a dishonorable discharge.  In order to qualify for these benefits a veteran must have had a service-connected disability and a serious employment handicap requiring rehabilitation.

9.      One type of service offered to qualifying veterans by the VR&E program was educational and vocational training.  In cases where educational and vocational training was determined to be necessary for the veteran to accomplish the purposes of the rehabilitation program, the VA paid for tuition, books, supplies, equipment, and other educational costs and fees.  The VA paid tuition and fees directly to the school on the enrolled veteran's behalf, and sometimes also paid the school directly for an enrolled veteran's books, supplies, and equipment.  Veterans participating in the VR&E program received a subsistence allowance while they pursued an education or training program.  The subsistence allowance was a monthly payment calculated based on the rate of attendance in a training program (full-time, three-quarter-time, or half-time), the number of dependents, and the type of training.

10.     Atius became an approved VR&E program vendor in or about May 2015.

11.     Each VR&E program vendor that received tuition payments from the VA was required to designate a School Certifying Official.  School Certifying Officials certified the accuracy of information submitted for purposes of payment by the vendor to the VA.  For example, school vendors such as Atius submitted VA Form 28-1905s to certify that veteran students were

enrolled in specified classes for specified class hours during specified dates. ATIUS EMPLOYEE 1 was Atius's primary School Certifying Official from in or about May 2015 until on or about February 27, 2017, at which time he delegated this role to ATIUS EMPLOYEE 2. As School Certifying Officials, ATIUS EMPLOYEE 1 and ATIUS EMPLOYEE 2 also submitted to the VA invoices reflecting veterans' course schedules, course tuition, and the costs of equipment and supplies that Atius purported to purchase for veterans.

12. PUBLIC OFFICIAL 1 was a VR&E program counselor employed by the VA. VR&E program counselors such as PUBLIC OFFICIAL 1 were responsible for providing rehabilitation and counseling services to veterans. These services included comprehensive evaluations, entitlement determinations, educational counseling, vocational counseling, rehabilitation planning, job placement, and case management. Each counselor was assigned to a certain number of educational institutions. PUBLIC OFFICIAL 1 was assigned to Atius. As part of PUBLIC OFFICIAL 1's duties as a VR&E program counselor, PUBLIC OFFICIAL 1 reviewed invoices submitted by Atius and had the authority to approve or deny invoices. PUBLIC OFFICIAL 1 was also responsible for advising veterans under his supervision which school they should attend.

13. PUBLIC OFFICIAL 2 was a VR&E program counselor employed by the VA. When PUBLIC OFFICIAL 1 was not in the office, or when he was otherwise unable to facilitate paperwork needed for the VA to pay Atius, PUBLIC OFFICIAL 2 completed and transmitted such paperwork so that Atius would be paid by the VA. PUBLIC OFFICIAL 2 also referred some students under her supervision to Atius. PUBLIC OFFICIAL 2 did so knowing of the below-described illicit bribery agreement between ATIUS EMPLOYEE 1 and PUBLIC OFFICIAL 1.

14. VETERAN 1 was a veteran enrolled in the VR&E program. PUBLIC OFFICIAL 1 supervised VETERAN 1 in PUBLIC OFFICIAL 1's capacity as a VR&E program counselor. As further described below, VETERAN 1 served as PUBLIC OFFICIAL 1's personal assistant for purposes of the scheme.

## COUNT ONE
## 18 U.S.C. § 371 – Conspiracy

15. The allegations contained in Paragraphs 1 through 14 of this Information are realleged as though fully set forth herein.

16. From in or about October 2016 through in or about December 2017, in the District of Columbia and elsewhere, the defendant,

**SOMBO KANNEH**

and others, including ATIUS EMPLOYEE 1, ATIUS EMPLOYEE 2, PUBLIC OFFICIAL 1, PUBLIC OFFICIAL 2, and VETERAN 1, knowingly and unlawfully combined, conspired, confederated and agreed to directly and indirectly, corruptly give, offer, and promise a thing of value to a public official, to influence any official act, to influence such public official to commit and aid in committing, and to collude in, and allow, any fraud, and to make opportunity for the commission of any fraud on the United States, and to induce such public official to do and omit to do any act in violation of the public official's lawful duty; that is, KANNEH and ATIUS EMPLOYEE 1 gave PUBLIC OFFICIAL 1 and VETERAN 1 cash money in exchange for PUBLIC OFFICIAL 1's performance of official acts favorable to Atius and ATIUS EMPLOYEE 1, in violation of 18 U.S.C. § 201(b)(1).

**Purpose of the Conspiracy**

17.     It was the purpose of the conspiracy for KANNEH, ATIUS EMPLOYEE 1, ATIUS EMPLOYEE 2, PUBLIC OFFICIAL 1, PUBLIC OFFICIAL 2, VETERAN 1, and others, to enrich and benefit themselves by PUBLIC OFFICIAL 1 taking official acts to cause the VA to pay Atius.

**Manner and Means of the Conspiracy**

18.     In or about August 2015, ATIUS EMPLOYEE 1 and PUBLIC OFFICAL 1 agreed to commit bribery and to defraud the VA in order to enrich themselves.  ATIUS EMPLOYEE 1 and PUBLIC OFFICIAL 1 agreed that ATIUS EMPLOYEE 1 would pay—and ATIUS EMPLOYEE 1 and KANNEH did in fact later pay—PUBLIC OFFICIAL 1 a 7% cash kickback of all payments made by the VA to Atius in exchange for PUBLIC OFFICIAL 1 taking official acts to cause the VA to pay Atius.  ATIUS EMPLOYEE 1 and PUBLIC OFFICIAL 1 agreed that the bribe payments should be made in cash to hide them from the Internal Revenue Service and to keep their scheme a secret.

19.     Under their agreement, PUBLIC OFFICAL 1's primary role in the scheme was to act in his official capacity to steer VR&E program veterans—both those directly under his supervision and those under the supervision of other VR&E program counselors, including PUBLIC OFFICIAL 2—to Atius, and to approve Atius's invoices for payment.  For his part, to maximize the scheme's profits, ATIUS EMPLOYEE 1 sent and caused to be sent course schedules, invoices, and other information to PUBLIC OFFICIAL 1 and other VA employees, including PUBLIC OFFICIAL 2, that inflated the amount of time that students were attending Atius.  PUBLIC OFFICIAL 1, and occasionally PUBLIC OFFICIAL 2, approved these documents without regard for their accuracy in order to maximize the profit that ATIUS EMPLOYEE 1 and PUBLIC OFFICIAL 1 made from the scheme.

20. Between on or about September 15, 2015, and on or about May 5, 2017, the VA paid Atius approximately $2,217,259.44 for tuition, equipment, and supplies for veterans enrolled at Atius. The majority of these students were assigned to PUBLIC OFFICIAL 1 and enrolled at Atius at PUBLIC OFFICIAL 1's direction. A small minority of these students were assigned to other VR&E program counselors, such as PUBLIC OFFICIAL 2, but enrolled at Atius at PUBLIC OFFICAL 1's urging, direction, or instruction in PUBLIC OFFICIAL 1's official capacity. PUBLIC OFFICIAL 1 solicited and received from ATIUS EMPLOYEE 1 a 7% share of the VA's payments to Atius irrespective of whether the payment was made for a veteran officially assigned to PUBLIC OFFICIAL 1 or to another VR&E program counselor.

21. From in or about August 2015 to in or about December 2017, in exchange for PUBLIC OFFICIAL 1's official acts and in furtherance of their scheme to commit bribery and defraud the VA, ATIUS EMPLOYEE 1 paid PUBLIC OFFICIAL 1 approximately $155,208.16.

**Overt Acts**

22. In or about October 2016, shortly after KANNEH was hired as Atius's financial manager, ATIUS EMPLOYEE 1 explained to KANNEH and ATIUS EMPLOYEE 2 the verbal, unwritten agreement to commit bribery and to defraud the VA that ATIUS EMPLOYEE 1 entered into with PUBLIC OFFICIAL 1 in August 2015.

23. As the Financial Manager for Atius, KANNEH was responsible for managing all of the finances of the business. In that capacity, she routinely moved money between Atius's business accounts to facilitate cash withdrawals following a payment by the VA. The purpose of moving money out of and between the accounts was in whole or in part to pay PUBLIC OFFICIAL 1's 7% share pursuant to ATIUS EMPLOYEE 1 and PUBLIC OFFICIAL 1's agreement.

24. From in or about October 2016 until in or about December 2017, either KANNEH or ATIUS EMPLOYEE 1 would withdraw cash from Atius's bank account following a payment by the VA for veterans' tuition, equipment, and supplies, in order to pay PUBLIC OFFICIAL 1's 7% share pursuant to ATIUS EMPLOYEE 1 and PUBLIC OFFICIAL 1's agreement.

25. The cash bribe payments were hand-delivered to PUBLIC OFFICIAL 1 or VETERAN 1 by KANNEH or ATIUS EMPLOYEE 1. KANNEH and ATIUS EMPLOYEE 1 delivered these payments, and PUBLIC OFFICIAL 1 and VETERAN 1 received these payments, knowing that the payments were bribes pursuant to ATIUS EMPLOYEE 1 and PUBLIC OFFICIAL 1's illicit agreement.

26. Of the $2,217,259.44 paid by the VA to Atius for veterans' education after ATIUS EMPLOYEE 1 and PUBLIC OFFICIAL 1 entered their illicit agreement in August 2015, $1,423,030.07 was paid by the VA to Atius after KANNEH joined Atius and began facilitating bribe payments to PUBLIC OFFICIAL 1 in October 2016. From that time forward, KANNEH and/or ATIUS EMPLOYEE 1 paid PUBLIC OFFICIAL 1 approximately $106,454.61 in exchange for PUBLIC OFFICIAL 1's official acts and in furtherance of their scheme to commit bribery and defraud the VA. During this time, Atius spent not more than approximately $607,822.39 on legitimate business expenses related to providing VR&E program veterans with an education. Included in these business expenses was KANNEH'S annual salary of $40,000. The balance of the payments was taken by ATIUS EMPLOYEE 1 for his personal benefit and ATIUS EMPLOYEE 1's unrelated business ventures in which ATIUS EMPLOYEE 1 partnered with KANNEH and others. Using her Atius debit card, KANNEH also used the funds taken from the VA for meals and spa treatments for herself. In December 2016, ATIUS EMPLOYEE 1 bought KANNEH a 2014 Range Rover using the money that the VA paid Atius.

(All in violation of Title 18, United States Code, Section 371)

## FORFEITURE ALLEGATION

1. Upon conviction of the offense alleged in Count One, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to this offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c). The United States will also seek a forfeiture money judgment equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to this offense.

2. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond he jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value described above, pursuant to Title 21, United States Code, Section 853(p).

(**Criminal Forfeiture**, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853(p))

                            JESSIE K. LIU
                            United States Attorney
                            For the District of Columbia

By:    /s/ Sonali D. Patel_____
         Sonali D. Patel
         Assistant United States Attorney

         ANNALOU TIROL
         Acting Chief, Public Integrity Section

By:    /s/ Simon J. Cataldo_____
         Simon J. Cataldo
         Trial Attorney